Mauro John MONTANA, Plaintiff-Appellant,

v.

William P. ROGERS, Attorney General of the United States, Defendant-Appellee.

No. 12851.

United States Court of Appeals Seventh Circuit.

April 29, 1960.

Rehearing Denied May 26, 1960.

Anna R. Lavin, Chicago, Ill., for appellant.

Charles Gordon, Immigration and Naturalization Service, St. Paul, Minn. Robert Tieken, U. S. Atty., Chicago, Ill. John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

This declaratory judgment action was brought in the district court under the provisions of Section 360 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503. Mauro John Montana, plaintiff-appellant (plaintiff), initiated this suit to determine his citizenship, a controversy having been precipitated by an administrative order for his deportation. William P. Rogers, Attorney General of the United States, is defendant-appellee.

The facts of the case are simple and not in dispute—plaintiff was born in Italy in 1906, the son of an alien father and a citizen mother. He claims he is a citizen of the United States. The application of the proper law to this factual situation is the controlling consideration before us.

The record reveals the following events. Maddelena Montana, mother of plaintiff, was born in Jersey City, New Jersey, in 1890. Her father was a naturalized American citizen. She lived in Jersey City until her marriage on August 26, 1905, to Guiseppe (Joe) Montana,

father of plaintiff. Guiseppe Montana was born in Italy; prior to his marriage, he had resided in either Brooklyn, New York or Bayonne, New Jersey without acquiring citizenship status in the United States.

On the 15th or 16th day of January, 1906, Maddelena and Guiseppe Montana left the United States en route to Italy, where they arrived on February 2, 1906. The purpose of their trip was to join Maddelena's parents who were visiting relatives in Italy. At the time she departed from the United States, Maddelena Montana was about four months pregnant.

Maddelena, the sole witness in the declaratory judgment action under review (plaintiff's illness precluded his testifying; the government offered no evidence) testified as to these subsequent events. About a month and a half after arriving in Italy, Maddelena, wishing to return to the United States, accompanied her parents to a "little town" to obtain passports. Her parents secured their passports, but the official on duty was unable to find her name. He informed Maddelena that she must see the American Consul to get her passport. Two or three days later Maddelena and her mother traveled to the American Consulate in Naples. According to her testimony, Maddelena said, "I want to go back to the United States and [the Consul] just took one look at me and he says, 'I am sorry, Mrs., you cannot go in that condition * * *. You come back after you get your baby.'" After this visit to the American Consulate Maddelena went to Acerra, Italy where she resided with her mother and where the plaintiff was born on June 26, 1906.

In late March or early April, 1906, Guiseppe Montana had returned to the United States. Maddelena stated that at this time they "were on the outs. We were not talking."

After the birth of plaintiff, Maddelena returned to the American Consul from whom she secured a passport. She stated she had "not much" conversation with the Consul, but "asked him about my baby's passport, and he said, 'You don't need it. It is in your own passport.'"

Maddelena, with plaintiff and his grandmother, then returned to the United States. The records of the Immigration Service produced at the trial reveal that plaintiff (then three months old) was admitted to this country as a citizen, accompanied by his citizen mother and alien grandmother.

After arrival in this country, plaintiff lived for three months with Maddelena and her parents. Thereafter, until his marriage in 1927, he lived with both parents who had become reconciled. After his marriage, and continuing to date, plaintiff has resided with his own family in the Chicago, Illinois, area. At no time has he instituted naturalization proceedings.

On January 7, 1958, plaintiff was served by the Immigration and Nationality Service with an order to show cause why he should not be deported. After an administrative hearing, an order directing his deportation became final on August 29, 1958. On September 3, 1958, plaintiff commenced the instant declaratory judgment action to define his citizenship status, to declare the deportation proceedings null and void, and to restrain defendant from taking any action on the basis of such proceedings.

In action relevant to this appeal, the district court, after a trial on the merits, entered judgment in favor of defendant and dismissed the complaint, from which judgment this appeal is taken.

■ On the basis of the described facts, plaintiff offers six theories which he contends establish his citizenship. His central argument revolves around the applicable statutory law in existence at the time of his birth. Plaintiff asserts that he became a citizen at birth by the operation of Section 2172 of the Revised Statutes of the United States.[1]

---

1. Section 2172, Rev.Stat. § 2172 (1875), provided in relevant part:

"* * * and *the children of persons who now are, or have been, citizens*

The Attorney General contends that Section 1993 of the Revised Statutes[2] exclusively and precisely controls the factual situation in question here and that citizenship under that section can be conferred to a child born abroad *only if the father was a citizen.*

Both Sections 2172 and 1993 were enacted as a part of the Act of June 20, 1874, 18 Stat. ch. 333, a comprehensive codification of all laws (including existing nationality statutes) which repealed prior laws. No other relevant statutes were enacted prior to plaintiff's birth in 1906. Section 2172, as enacted, was substantially identical to Section 4 of the Act of 1802, 2 Stat. 155 (see 8 U.S.C.A. §§ 1–18, Historical Note). Section 1993 reenacted the Citizenship Act of 1855, 10 Stat. 604.

Congress had passed the Act of 1855 in response to an article by Mr. Horace Binney in 2 American Law Reports (1854) in which Mr. Binney declared that the Act of 1802 was retrospective in application; that the phrase "children of persons who now are, or have been citizens of the United States" is operative *only* to persons born prior to the Act of 1802; and that there were no operative statutes covering similar situations subsequent to 1802. The Act of 1855 remedied that defect. See United States v. Wong Kim Ark, 1898, 169 U.S. 649, 665, 673, 674, 18 S.Ct. 456, 42 L.Ed. 890; Weedin v. Chin Bow, 1927, 274 U.S. 657, 663, 664, 47 S.Ct. 772, 71 L.Ed. 1284. That statute provided that persons *"heretofore * * * or hereafter"* born abroad of *citizen fathers* (when such fathers had resided in the United States) were declared to be citizens of the United States. This Act expressly operated retrospectively and prospectively, but no repealer of the Act of 1802 was provided.

This provision was reenacted by the Act of 1874 and appeared as Section 1993 of the Revised Statutes. It expressly applied prospectively and retrospectively. However, plaintiff contends that Section 2172, reenacted concurrently, operated prospectively and is the basis for declaring his citizenship.[3] It is true that Section 2172 was not expressly limited to certain factual situations in point of time prior to 1802. The lack of such limiting language may have been due to inadvertence. It may have been enacted to apply to situations between 1802 and 1855. Cf. United States v. Wong Kim Ark, 169 U.S. at page 674, 18 S.Ct. at page 466. It may have been reenacted merely to save rights of citizenship which accrued prior to 1802.

In any event, considering both sections of the Act of 1874, we hold that Section 1993 applies exclusively to the factual situation before us. Since plaintiff's father was not a citizen of the United States, no rights of citizenship descended to plaintiff at birth. This determination is consistent with the holdings in Mock Gum Ying v. Cahill, 9 Cir., 1936, 81 F.2d 940, and D'Alessio v. Lehman, District Director of Immigration and Naturalization Service, D.C.N.D. Ohio 1960, 183 F.Supp. 345.

■ Plaintiff advances other theories of citizenship based on statutory grounds. They can be rejected summarily. Plaintiff argues that citizenship vested in him under Section 1993, supra, since at birth he was in the sole custody of his mother (his father having returned to the Unit-

---

*of the United States,* shall, though born out of the limits and jurisdiction of the United States, be considered as citizens * * *." (Emphasis added.)

2. Section 1993, Rev.Stat. § 1993 (1875), provided:

"All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, *whose fathers were* or may be at the time of their birth, *citizens* thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States." (Emphasis added.)

3. Plaintiff construes the provision "the children of persons" to apply in the distributive and not to require both parents to be citizens; and "now are, or have been * * * born" to operate both prospectively and retrospectively.

ed States). However, the Department of State ruling he relies upon relates to illegitimate children who do not have a father in contemplation of law. In addition, plaintiff argues that Section 1 of the Act of 1934, 48 Stat. 797, (which grants citizenship to infants born abroad to either a citizen father *or* mother) is prospective and retrospective in operation and that it is merely declaratory of existing law. But an examination of this section reveals that it is expressly limited in its operation to children "hereafter born" abroad. Finally, plaintiff argues that he gained citizenship by the terms of Sections 3 and 5 of the Act of March 2, 1907, 34 Stat. 1228, 1229. This act denationalized American women who married aliens and provided that minor children born abroad of such alien parents should be deemed citizens of the United States upon the resumption of American citizenship by the mother. However, in this case plaintiff's mother never lost her citizenship, and there could be no later resumption of citizenship by which plaintiff could claim a derivative naturalization. See In re Wright, D.C. E.D.Pa., 1937, 19 F.Supp. 224.

■ Plaintiff has advanced a novel constitutional argument that Fourteenth Amendment rights of citizenship attach at the moment of conception and that since plaintiff was conceived in the United States, he is a citizen. Whatever rights might accrue to an unborn child by the operation of the common law and by statute, it is clear that the Fourteenth Amendment limits citizenship to persons "*born* * * * in the United States."

■ Further, the action of the American Consul in Naples (even if one is fully to believe Maddelena) in refusing to issue a passport is not sufficient, as a matter of law, to grant citizenship to plaintiff. The cases cited by plaintiff relate to native-born citizens; the issues there were voluntary expatriation. These holdings do not control the situation before us. See Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 1947, 161 F.2d 860, and Podea v. Acheson, 2 Cir., 1950, 179 F.2d 306.

■ Finally, even if the action of Immigration officials (the record of such action was introduced at trial) was sufficient to establish a *prima facie* case of plaintiff's citizenship, it was rebutted convincingly by the showing that the Immigration officers committed legal error in designating plaintiff as a citizen at the time of his entry. See Lee Hon Lung v. Dulles, 9 Cir., 1958, 261 F.2d 719, and Delmore v. Brownell, 3 Cir., 1956, 236 F.2d 598. Such designation of plaintiff's citizenship was neither the formal adjudication in Lung nor the considered determination in Delmore.

The judgment of the district court is Affirmed.