## In re LYNCH.

District Court, S. D. California, Central Division. March 25, 1929.

JAMES, District Judge. Molly Lynch has presented a petition for naturalization. The United States Naturalization Examiner suggests the question as to whether the petition should not, under the facts, be dismissed. The point is as to whether petitioner lost the status of a citizen by marriage.

Petitioner was born in the state of Kentucky. In the year 1889 she married William Lynch, an alien. That marriage has never been dissolved. Petitioner has, since her marriage, resided continuously in the United States with her husband.

Prior to the Act of March 2, 1907 (34 Stat. 1228), there was no declaration of Congress as to whether a woman marrying an alien lost her American citizenship. By an act approved on the date referred to, it was provided that an American woman who married an alien abandoned her citizenship. The marriage of Mrs. Lynch, having occurred prior to March 2, 1907, is not, of course, affected by the provisions of the statute passed on that date.

■ Did the law of 1907 carry an effect not already recognized and enforced where a woman citizen marries an alien? The point has been differently decided by the federal Judges, although the matter has not been directly passed upon by the Supreme Court of the United States. There are decisions holding that the statute is merely declaratory of the common law as it existed prior to the passage of the act. Those decisions do not satisfactorily point out authority for the asserted common-law rule in the extent claimed for it. Perhaps the reasons in the minds of the judges prompting the statement are gathered from the common-law rule which recognized the husband as the dominant party in the marital community. Looking into Blackstone (Jones' Blackstone, vol. I, par. 598) we find:

"By marriage, the husband and wife are one person in law; that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband. * * *"

If, under that rule, the citizenship of the wife is to be considered as one of the things which by her marriage is "incorporated and consolidated" into that of the husband, then the view of the Judges, stating the statute to be declaratory of the common law, is right beyond question. But the Supreme Court of the United States early decided that civil rights only were affected by the marriage.

"The incapacities of femes covert, provided by the common law, applied to their civil rights, and are for their protection and interest. But they do not reach their political rights, nor prevent their acquiring or losing a national character. Those political rights do not stand upon the mere doctrines of municipal law, applicable to ordinary transactions, but stand upon the more general principles of the law of nations." Shanks v. Dupont, 3 Pet. 242, 7 L. Ed. 666.

■ The quotation just used was repeated in United States v. Wong Kim Ark, 169 U. S. 649, 18 S. Ct. 456, 42 L. Ed. 890. A woman may become expatriated by marrying an alien and changing her domicile to the country of her husband. That loss of her citizenship follows, there can be little doubt. This result is wrought, not by the marriage alone, but by marriage accompanied by change of domicile. In such a case the wife adopts the nationality of her husband. The United States has given full recognition to the right of expatriation. R. S. § 1999 (8 USCA § 15).

And so it seems logical to differentiate between the case of a woman who marries an alien, but who does not abandon her domicile in the United States, and one who, after such a marriage, leaves this country and takes up her abode under the government to which her husband owes allegiance. In this case the petitioner has never abandoned her residence in the United States; she has not shown any intent to expatriate herself. There having been at the time of her marriage no law visiting any of the consequences upon her which

the statute later prescribed, she should be held not to have suffered the disability adverted to.

While the facts considered were not exactly like those shown here, the decisions in the following cases fully support the conclusions herein expressed: Wallenburg v. Missouri Pac. R. Co. (C. C.) 159 F. 217; Ruckgaber v. Moore (C. C.) 104 F. 947, affirmed in (C. C A. 2) 114 F. 1020; Comitis v. Parkerson (C. C.) 56 F. 556, 22 L. R. A. 148; In re Fitzroy (D. C.) 4 F. (2d) 541.

It follows that the petition of Mrs. Lynch should be dismissed, and it is so ordered.