## In re WRIGHT.

District Court, E. D. Pennsylvania.
May 3, 1937.

Thomas J. McKeghney, U. S. Naturalization Examiner.

MARIS, District Judge.

Mary Louise Wood Wright has made application to the court under the provisions of the Act of June 25, 1936, 49 Stat. 1917 (8 U.S.C. § 9a [8 U.S.C.A. § 9a]), to take the oath of allegiance so as to confirm her citizenship under the provisions of that act, which are as follows: "Hereafter [June 25, 1936] a woman, being a native-born citizen, who has or is believed to have lost her United States Citizenship (sic) solely by reason of her marriage prior to September 22, 1922, to an alien, and whose marital status with such alien has or shall have terminated, shall be deemed to be a citizen of the United States to the same extent as though her marriage to said alien had taken place on or after September 22, 1922: Provided, however, That no such woman shall have or claim any rights as a citizen of the United States until she shall have duly taken the oath of allegiance as prescribed in section 4 of the Act [section 381 of this title] approved June 29, 1906 (34 Stat. 596; U.S.C., title 8, sec. 381), at any place within or under the jurisdiction of the United States before a court exercising naturalization jurisdiction thereunder or, outside of the jurisdiction of the United States, before a secretary of embassy or legation or a consular officer as prescribed in section 1750 of the Revised Statutes of the United States [section 131 of Title 22] (U.S.C., title 22, sec. 131); and such officer before whom such oath of allegiance shall be taken shall make entry thereof in the records of his office or in the naturalization records of the court, as the case may be, and shall deliver to such person taking such oath, upon demand, a certified copy of the proceedings had, including a copy of the oath administered, under the seal of his office or of such court, at a cost not exceeding $1, which shall be evidence of the facts stated therein before any court of record or judicial tribunal and in any department of the United States."

The applicant was born in the United States on May 3, 1865, and resided here until 1889. From 1889 until 1891 she was in France engaged in study. She returned to the United States in 1891 and remained until 1898, when she again went abroad to study and remained until 1901. She returned to the United States in 1901 and remained until 1905, when she again went to Europe. She married John Wright, a British subject, on October 20, 1906, at Geneva, Switzerland. Following her marriage she and her husband lived in Italy until 1912, when they went to England where they resided until her husband's death on December 19, 1933. In November, 1936, she returned to the United States and has since resided in Philadelphia.

It will be seen that Mrs. Wright was a native-born citizen. The question for our determination is whether she lost her United States citizenship solely by reason of her marriage prior to September 22, 1922, to an alien. If she did she must now be deemed to be a citizen and is entitled to take the oath of allegiance under the Act of 1936 since her status as the wife of an alien has terminated. If her

marriage had taken place after the passage of the Act of March 2, 1907 (34 Stat. 1228), the answer would necessarily have been that she did lose her citizenship by reason of her marriage, since that act provided that "any American woman who marries a foreigner shall take the nationality of her husband." Section 3. Her marriage took place before the passage of that act, however, and it, therefore, becomes necessary for us to determine whether prior to March 2, 1907, the marriage of an American woman to an alien terminated her citizenship.

On this question the cases appear to be in hopeless conflict. A number of them hold that the Act of 1907 was but declaratory of the prior law. Pequignot v. City of Detroit (C.C.) 16 F. 211; In re Page (D.C.) 12 F.(2d) 135; Petition of Drysdale (D.C.) 20 F.(2d) 957; In re Krausmann (D.C.) 28 F.(2d) 1004; In re Wohlgemuth (D.C.) 35 F.(2d) 1007. On the other hand, it has been held that prior to March 2, 1907, the marriage of an American woman to an alien and residence with him abroad in the country of his citizenship until his death did not deprive her of her American citizenship. Petition of Zogbaum (D.C.) 32 F.(2d) 911. It will be noted that all but one of these cases were decided long after 1907.

After full consideration, we find ourselves unable to accept either of these views, but have reached the conclusion which we think is supported by a great majority of the cases decided prior to March 2, 1907, that the marriage of an American woman to an alien prior to that date did not of itself deprive her of her American citizenship, even though such a marriage if followed by withdrawal from the United States would have that result. Shanks v. Dupont, 3 Pet. 242, 7 L.Ed. 666; Comitis v. Parkerson (C.C.) 56 F. 556, 22 L.R.A. 148; Ruckgaber v. Moore, Collector (C.C.) 104 F. 947, affirmed (C.C.A.) 114 F. 1020; Wallenburg v. Missouri Pac. Ry. Co. (C.C.) 159 F. 217; In re Fitzroy (D.C.) 4 F.(2d) 541; In re Lynch (D.C.) 31 F.(2d) 762.

It seems to us that these cases from Shanks v. Dupont to Wallenburg v. Missouri Pac. Ry. Co. represent the state of the law as declared by the federal courts during the period in question. Furthermore, they include the only ruling of the Supreme Court upon the subject. Nothing could be clearer than the following statement of Mr. Justice Story in Shanks v. Dupont, supra, 3 Pet. 242, at page 246, 7 L.Ed. 666: "Neither did the marriage with Shanks produce that effect; because marriage with an alien, whether a friend or an enemy, produces no dissolution of the native allegiance of the wife. It may change her civil rights, but it does not affect her political rights or privileges. The general doctrine is, that no persons can, by any act of their own, without the consent of the government, put off their allegiance, and become aliens."

The most that can be said is that the marriage of an American woman to an alien gave her an election to renounce her citizenship. To effect this renunciation and to complete expatriation, however, it was necessary for her to withdraw from the country or take some other equally patent step to show her election. This is clearly shown by the following statement of Judge Thomas in Ruckgaber v. Moore, Collector, supra, 104 F. 947, at page 948: "By the several statutes of America, France, and Great Britain, the marriage of a citizen of such country with an alien wife confers upon the latter the citizenship of the husband; and this policy of three great powers, in connection with section 1999 of the Revised Statutes, which proclaims that expatriation is an inherent right, establishes that the political status of the wife follows that of her husband, with the modification that there must be withdrawal from her native country, or equivalent act expressive of her election to renounce her former citizenship as a consequence of her marriage. Some serious objections to this, or even the opposite conclusion, exists, but it has been reached after due consideration of the subject, and pertinent authorities, including Shanks v. Dupont, 3 Pet. [242], 243, 7 L.Ed. 666; Pequignot v. City of Detroit (C.C.) 16 F. 211; and Comitis v. Parkerson (C.C.) 56 F. 556 [22 L.R.A. 148]."

In the light of these contemporary cases laying down the prior law, we cannot follow the retrospective statements of that law set forth in Re Page and other similar cases cited above which hold that the Act of 1907 was merely declaratory of the previous law.

We accordingly conclude that if Mrs. Wright lost her United States citizenship, it was not lost solely by reason of her marriage prior to September 22, 1922, to

an alien, but resulted from her marriage plus her withdrawal from the United States. It follows that she is not entitled to take the oath of allegiance under the Act of June 25, 1936, and her application to do so must accordingly be refused.