**Petition of BLACK.**

**In re EADIE.**

**No. 5609.**

District Court, D. Minnesota, Fifth Division.

Sept. 5, 1945.

Harry Gordon, Officer in Charge, Immigration and Naturalization Service, of Duluth, Minn., for dismissal of petition.

NORDBYE, District Judge.

There was presented to this Court at a naturalization hearing held at Duluth, Minnesota, on May 1, 1945, the above-named petition. The Government had filed a motion for dismissal. The matter was continued until September 1, 1945, and the Government was requested to submit a brief within sixty days. The Court is now in receipt of the points and authorities re-lied on by the Government. The petition for naturalization of Edith S. Black in behalf of her daughter, Lois Beryl Eadie, fifteen years of age, is presented under 8 U.S.CA. § 715.

Edith S. Black was born at Duluth, Minnesota, on December 16, 1904. On March 29, 1929, she married one Wilfred Charles Eadie, a British subject, at Montreal, Canada. Lois Beryl Eadie was born of this marriage at Montreal on November 16, 1929. Her father, Wilfred Charles Eadie, never entered the United States for permanent residence and never became a citizen of the United States, but it does not appear that he was ineligible for citizenship in this country. The petitioner, Edith S. Black, was granted a divorce from her husband, Wilfred Charles Eadie, in the District Court of Duluth, Minnesota, on September 7, 1938. She was awarded full care, custody and control of the minor child of said parties, who at that time was eight years of age. Apparently, the mother and daughter have permanently resided in Minnesota since August, 1935. It is not contended that Edith S. Black ever made a formal renunciation of her United States citizenship before any court having jurisdiction over naturalization of aliens. The Act of March 2, 1907, Section 3, 34 Stat. 1228, provided:

"That any American woman who marries a foreigner shall take the nationality of her husband. At the termination of the marital relations she may resume her American citizenship, if abroad, by registering as an American citizen within one year with a consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein."

This Act was amended on September 22, 1922, to read as follows:

"A woman citizen of the United States shall not cease to be a citizen of the United States by reason of her marriage after the passage of this Act, unless she makes a formal renunciation of her citizenship before a court having jurisdiction over naturalization of aliens * * *." Section 3, Act of September 22, 1922, 42 Stat. 1022, 8 U.S.C.A. § 9.

Section 5, Act of March 2, 1907, 34 Stat. 1229, 8 U.S.C.A. § 8, provided:

"That a child born without the United States of alien parents shall be deemed a

citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the parent: Provided, That such naturalization or resumption takes place during the minority of such child: And provided further, That the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States."

This Act, however, was amended on May 24, 1934, to read as follows:

"That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the father or mother: Provided, That such naturalization or resumption shall take place during the minority of such child: And provided further, That the citizenship of such minor child shall begin five years after the time such minor child begins to reside permanently in the United States." Section 5, amended by Act of May 24, 1934, 48 Stat. 797, 8 U.S.C.A. § 8.

■ It seems clear, under the facts recited and the statutes referred to, that Mrs. Black did not cease to be a citizen of the United States by reason of her marriage to this alien or by her residence in Canada. In that the mother did not lose her citizenship, the question therefore resolves itself into the query: Did the act of the mother in returning to the United States in August, 1935, during the minority of the child for permanent residence therein and obtaining a divorce in 1938 constitute a resumption of her American citizenship within the meaning of the Acts referred to?

■■ It should be recognized that, generally speaking, there can be no resumption of citizenship unless citizenship has been lost. Citizenship is usually resumed under certain statutes by some affirmative act. The resumption may take place independently of judicial proceedings, or it may be the taking of a formal oath of renunciation and allegiance before a designated official. Strictly speaking, therefore, it may be urged that Mrs. Black could not resume her citizenship if she had never lost it. But, in considering the various statutes referred to, we are concerned with the status of the child for citizenship purposes. Notwithstanding the Act of September 22, 1922, whereby an American citizen did not lose her citizenship upon her marriage to an alien, a child born outside of the United States to an alien father and a citizen

mother did not become an American citizen by virtue of parentage. See, Citizenship of R. Bryan Owen, 36 Op.Atty.Gen. 197, 200; In re Citizenship Status of Minor Child Where Mother Alone Becomes Citizen Through Naturalization, D.C.N.J., 25 F.2d 210.

■ Lois Beryl Eadie at birth, therefore, took the nationality of her father. However, it is clear that, under the statutes referred to, if her mother had lost her citizenship, the child, upon the termination of the marital relations by the mother and upon the mother's resumption of American citizenship by returning to the United States for permanent residence, would become a citizen of the United States under the Act of May 24, 1934, beginning five years after the time she began to reside here permanently. Under the admitted facts herein, while the mother never lost her citizenship by reason of the Act of September 22, 1922, her child was nevertheless an alien. It is difficult to believe, therefore, that, under these circumstances, Congress intended, by the passage of the Act of September 22, 1922, to render the citizenship rights of a child born to a marriage after that date less favorable than they would have been if the mother had married prior to September 22, 1922. While Mrs. Black could not become naturalized in judicial proceedings and thereby bestow citizenship rights upon her alien child because she had never lost her American citizenship, she could, however, to all practical purposes, resume her American citizenship by returning permanently to the United States and terminating the marriage relationship with her alien husband. Whether, under these circumstances, the resumption of citizenship is termed "fictional" or "real" is of no particular significance. Congress intended that when a mother or father of an alien minor child became an American citizen and the child returned to this country for permanent residence, then the rights of American citizenship should be conferred on the minor child as provided in the Act of May 24, 1934. No sound reason is suggested why any distinction should be made for citizenship purposes under this statute between the mother of an alien child becoming an American citizen, and the mother, a citizen, returning to the United States during the minority of the child for permanent residence and terminating the marriage with the alien father. Here, the factual situation meets every requirement

of the statute. The child was born an alien. The mother remained a citizen and freed herself from the bonds of marriage with the alien father by returning to this country for permanent residence and obtaining a divorce. The child has permanently resided here for over five years. The resumption of American citizenship by the mother under these circumstances is just as real and effective within the intent of the Act of May 24, 1934, as if she had been married prior to September 22, 1922. Certainly, her status as an American citizen, in so far as that would bestow rights upon the minor child is concerned, was the same. It seems clear, therefore, that the factual basis which Congress contemplated as a condition precedent to the granting of citizenship to an alien minor child has been fully attained. To hold otherwise would be to unduly emphasize form rather than substance.

A similar question was before the Attorney General of the United States and upon which he rendered an opinion dated March 1, 1933, 37 Op.Atty.Gen. 90. The case was decided under the 1907 Act and before the Act of 1934 went into effect, but the provisions concerning "resumption of citizenship" are the same in both acts. It arose upon the question of the citizenship of one Fernando Jorge Coll y Picard. The child in that case was born in Spain in 1927 to a native American woman who was married in 1923 to a Spanish subject. The mother had preserved her American citizenship under the Act of September 22, 1922. She returned to the United States for permanent residence with her minor child and obtained a divorce in Reno, Nevada, in 1931. Absolute custody of the child was awarded to her in the decree of divorce. The Attorney General determined that the mother, being a citizen of the United States and having remained a citizen notwithstanding her marriage, should, as far as the child was concerned for citizenship purposes, "be treated as in precisely the same situation as one who had resumed her citizenship," and held, therefore, Section 5 of the Act of March 2, 1907, to be applicable. He further held that, in view of the particular provisions of the laws of Nevada, she was a "parent" within the meaning of Section 5 of the Act of March 2, 1907; that having resumed her American citizenship within the meaning of that statute, and the child's legal residence following her residence, it would follow that

the child became an American citizen upon its permanent residence in this country. The only question which apparently troubled the Attorney General was whether the mother was a "parent" within the meaning of the Act, in that it appeared that the child's father was living and an alien. That question, in view of the Nevada divorce decree, was resolved in favor of the mother, and he determined that, by virtue of that particular divorce decree, the father, for the purposes of that Act, had been permanently deprived of his legal status as a parent as effectively as if he were deceased.

In the instant situation, however, we do not have the question as to whether the mother is a "parent" in that Section 5 of the Act of March 2, 1907, was amended on May 24, 1934, and it refers to the resumption of American citizenship "by the father or mother" instead of the resumption of American citizenship "by the parent." The Act of May 24, 1934, was passed to clarify the Act of March 2, 1907, by "expressing more clearly the intent of Congress." United States ex rel. Guest v. Perkins, Secretary of Labor, D.C., 17 F.Supp. 177, 178, 180.

Mrs. Black was divorced on September 7, 1938. She and her minor child have resided in this country since 1935. The Act of May 24, 1934, states that, upon resumption of American citizenship by the father or mother during the minority of the child, the citizenship of such child shall begin five years after the beginning of the alien's permanent residence herein. The five-year period begins in August, 1935, when the child began to reside here permanently with her mother, and she became a citizen in August, 1940. In that the minor attained her citizenship before the Nationality Act of 1940, 8 U.S.C.A. §§ 501–907, became effective, the revision or repeal by that Act of any statutes referred to herein is not discussed.

It follows, therefore, that Lois Beryl Eadie must be held to have been a naturalized citizen of the United States at the time the petition for naturalization was filed herein. It is so determined and ordered. Therefore, the motion made by the Naturalization Examiner for dismissal on the grounds that the petitioner has failed to establish the beneficiary as an alien or national of the United States eligible for naturalization must be sustained, and it is so ordered.