MONTANA *v.* KENNEDY, ATTORNEY GENERAL.

No. 198.   Argued March 22, 1961.—Decided May 22, 1961.

*Anna R. Lavin* argued the cause and filed a brief for petitioner.

*Charles Gordon* argued the cause for respondent. With him on the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Wilkey, Acting Assistant Attorney General Foley* and *Beatrice Rosenberg.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Having been ordered deported as an alien on grounds which are not contested, petitioner, claiming to be a citizen, brought the present declaratory judgment action under 8 U. S. C. § 1503 to determine his citizenship status.

Petitioner, whose mother is a native-born United States citizen and whose father is a citizen of Italy (their marriage having been in the United States), was born in Italy in 1906 while his parents were temporarily residing there, and entered the United States with his mother later the same year. He has continuously resided in the United States since that time and has never been naturalized. His claim of United States citizenship is based primarily upon two statutes: (1) Section 2172 of the Revised Statutes (1878 ed.); [1] and (2) Section 5 of an Act of 1907.[2] The Court of Appeals found that neither statute obtained as to one in the circumstances of this petitioner, 278 F. 2d 68. We granted certiorari to review that conclusion, 364 U. S. 861, in view of the apparent harshness of the result entailed. For reasons given hereafter, we agree with the Court of Appeals.

I.

In 1874 Congress re-enacted two statutes which seem to defy complete reconciliation. R. S. § 2172, a re-enact-

---

[1] See p. 310, *infra.*

[2] See pp. 312–313, *infra.*

ment of § 4 of an Act of April 14, 1802 (2 Stat. 155), provided that

> "children of *persons* who now are, or have been, citizens of the United States, shall, though born out of the limits and jurisdiction of the United States, be considered as citizens-thereof . . . ." (Emphasis added.)

R. S. § 1993, substantially a re-enactment of § 1 of an Act of February 10, 1855 (10 Stat. 604), provided that

> "All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose *fathers* were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States." (Emphasis added.)

Since R. S. § 2172 spoke broadly of children of citizen "persons"—perhaps citizen mothers as well as citizen fathers—while R. S. § 1993 spoke only of children of citizen "fathers" (and even then embraced only citizen fathers who had been United States residents), there is a conflict in the apparent reach of the simultaneously re-enacted provisions.

In this circumstance petitioner, claiming that "persons" in R. S. § 2172 included, in the disjunctive, both citizen fathers and mothers, contends that we are faced with deciding either that R. S. § 1993 simply *repeats,* with modifications, that part of R. S. § 2172 relating to "fathers," (leaving its provisions relating to "mothers" intact), or that it *repeals* that part of R. S. § 2172 relating to "mothers." He suggests that we make the former choice to avoid the admitted severity of deporting a fifty-five-year-old man who has resided in this country since he was an infant. The Government, on the other hand,

asserts that R. S. § 2172 should be read as embracing only children *both* of whose parents were American citizens. Whatever the force of these opposing contentions may be, other considerations unmistakably lead to the conclusion that petitioner's claim to citizenship under R. S. § 2172 must be rejected.

In 1854 Horace Binney, one of the country's leading lawyers and a recognized authority on the immigration laws, published an article entitled "The Alienigenae of the United States" [3] in which he argued that the words "who now are, or have been" in the 1802 predecessor of R. S. § 2172 had the effect of granting citizenship to the foreign-born children only of persons who were citizens of the United States *on or before* the effective date of the 1802 statute (April 14, 1802), in other words that the statute had no prospective application. Foreign-born children of persons who became American citizens between April 14, 1802 and 1854, were aliens, Mr. Binney argued. In 1855 Congress responded to the situation by enacting the predecessor (10 Stat. 604) of R. S. § 1993.[4] The provision had retroactive as well as prospective effect, but was clearly intended to apply only to children of citizen *fathers*.[5]

---

[3] 2 American Law Register 193.

[4] That the enacting Congress accepted and acted upon the view that the Act of 1802 (later re-enacted as R. S. § 2172) had no effect as to parents who became citizens after 1802 is clear from the following statement of Congressman Cutting:

". . . the children of a man [U. S. citizen] who happened to be in the world on the 14th of April, 1802, born abroad, are American citizens, while the children of persons born on the 15th of April, 1802, are aliens to the country." Cong. Globe, 33d Cong., 1st Sess. 170 (1854).

[5] Congressman Cutting explained:

"In the reign of Victoria, in the year 1844, the English Parliament provided that the children of English mothers, though married to foreigners, should have the rights and privileges of English subjects,

The view of Mr. Binney and the 1855 Congress that the Act of 1802 had no application to the children of persons who were not citizens in 1802 has found acceptance in the decisions of this Court. See *United States* v. *Wong Kim Ark,* 169 U. S. 649, 673–674; *Weedin* v. *Chin Bow,* 274 U. S. 657, 663–664; see also *Mock Gum Ying* v. *Cahill,* 81 F. 2d 940. The commentators have agreed. See 2 Kent, Commentaries, at 53; 3 Hackworth, Digest of International Law, § 222; cf. *Matter of Owen,* 36 Op. Atty. Gen. 197, 200. Finally Congress has repeatedly stated and acted upon that premise. See, *e. g.,* H. R. Rep. No. 1110, 67th Cong., 2d Sess., at p. 3. Indeed when, in 1934, Congress finally granted citizenship rights to the foreign-born children of citizen mothers, 48 Stat. 797, it not only specifically made the provision prospective, but further made clear its view that this was a reversal of prior law. See H. R. Rep. No. 131, 73d Cong., 1st Sess., p. 2, and S. Rep. No. 865, 73d Cong., 2d Sess., p. 1.

Whatever may have been the reason for the 1874 re-enactment of the Act of 1802, as R. S. § 2172, we find nothing in that action which suggests a purpose to reverse the structure of inherited citizenship that Congress created in 1855 and recognized and reaffirmed until 1934. On this basis and in the light of our precedents, we hold that at the time of petitioner's birth in 1906, R. S. § 1993 provided the sole source of inherited citizenship status for foreign-born children of American parents. That statute cannot avail this petitioner, who is the foreign-born child of an alien father.

## II.

Petitioner's second ground for claiming citizenship is founded upon § 5 of an Act of March 2, 1907 (34 Stat.

though born out of allegiance. *I have not, in this bill, gone to that extent, as the House will have observed from the reading of it.*" (Emphasis added.) Cong. Globe, 33d Cong., 1st Sess. 170.

1229), which provided in relevant part "That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of . . . resumption of American citizenship by the parent . . . ." [6] Petitioner's claim in this regard necessarily depends upon our finding (1) that his mother was an alien at the time of his birth, having lost her citizenship either when she married an alien or when she traveled abroad with her alien husband in 1906, and (2) that his mother resumed her citizenship on her return to the United States.

It is sufficient to dispose of the contention that we find that mere marriage to an alien, without change of domicile, did not terminate the citizenship of an American woman either at the time of petitioner's birth or his mother's return to / the United States, both of which occurred in 1906.[7]  This view, which is supported by the weight of authority,[8] is indeed not contested by petitioner, who instead asks this Court to construe § 5 of the 1907 Act so as to avoid the obvious paradox of giving preferred treatment to the children of a woman who has lost her citizenship over that afforded to the children of a

---

[6] In the context of the section it is clear that the word "parent" refers both to fathers and mothers.  Section 2 of the Act of May 24, 1934 (48 Stat. 797), on which petitioner alternatively relies, is in all respects here material a re-enactment of the above provision.

[7] By § 3 of the Act of March 2, 1907 (34 Stat. 1228), marriage to an alien *did* terminate the citizenship of an American woman.

[8] See, *e. g., Comitis* v. *Parkerson,* 56 F. 556, 559–560 (C. C. E. D. La.), writ of error dismissed *sub nom. Comitiz* v. *Parkerson,* 163 U. S. 681; *Ruckgaber* v. *Moore,* 104 F. 947, 948–949 (C. C. E. D. N. Y.), affirmed, 114 F. 1020 (C. A. 2d Cir.) ; *Wallenburg* v. *Missouri Pacific R. Co.,* 159 F. 217, 219 (C. C. D. Neb.) ; *In re Fitzroy,* 4 F. 2d 541, 542 (D. C. D. Mass.) ; *In re Lynch,* 31 F. 2d 762 (D. C. S. D. Cal.) ; *Petition of Zogbaum,* 32 F. 2d 911, 912–913 (D. C. D. S. D.) ; *In re Wright,* 19 F. Supp. 224, 225 (D. C. E. D. Pa.) ; *Watkins* v. *Morgenthau,* 56 F. Supp. 529, 530–531 (D. C. E. D. Pa.).

woman who has never lost her citizenship.[9]   Paradoxical though this may be, we have no power to "construe" away the unambiguous statutory requirement of § 5 that petitioner's mother must have lost her citizenship at the time of his birth.[10]

### III.

Petitioner makes a further contention.   It is urged that the Government should not be heard to say that petitioner was born outside the United States because of its own misconduct.   Petitioner's mother testified that she had been prevented from leaving Italy prior to petitioner's birth by the refusal of an American Consular Officer to issue her a passport because of her pregnant condition.   However, it is uncontested that the United States did not require a passport for a citizen to return to the country in 1906.   Moreover, petitioner has presented no evidence of any Italian requirement of an American passport to leave Italy at that time.   In this light the testimony by petitioner's mother as to what may have been only the consular official's well-meant advice—"I am sorry, Mrs., you cannot [return to the United States] in that condition"—falls far short of misconduct such

---

[9] Such a construction was espoused by Attorney General William D. Mitchell in 1933, 37 Op. Atty. Gen. 90, and is also indicated in two District Court cases.   See *Petition of Black,* 64 F. Supp. 518; *Petition of Donsky,* 77 F. Supp. 832.   But see *D'Alessio* v. *Lehman,* 183 F. Supp. 345, which takes a contrary view.

[10] Moreover, even if petitioner's mother had suffered a loss of citizenship which was later reacquired, petitioner's case would still not come within the statutory definition of "resumption of American citizenship."   Congress gave explicit content to this requirement of § 5 of the Act of 1907, § 3 of the same Act providing:

*"At the termination of the marital relation* she may resume her American citizenship . . . ."   (Emphasis added.)   34 Stat. 1228. Petitioner's mother has never terminated her marital relation with petitioner's alien father.

as might prevent the United States from relying on petitioner's foreign birth.  In this situation, we need not stop to inquire whether, as some lower courts have held, there may be circumstances in which the United States is estopped to deny citizenship because of the conduct of its officials.[11]

*Affirmed.*

MR. JUSTICE DOUGLAS dissents.

---

[11] See, *e. g., Podea* v. *Acheson,* 179 F. 2d 306; *Lee You Fee* v. *Dulles,* 236 F. 2d 885, 887.