MATTER OF ROCHA

In DEPORTATION Proceedings

A–12732967

*Decided by Board September 24, 1964*

Notwithstanding that respondent acted in good faith and made a full disclosure of all the facts at the time of her application for a United States passport, the erroneous issuance to her of such a passport by an official of the U.S. Government does not bestow citizenship on her when she did not acquire U.S. citizenship at birth abroad under any statute, and she is deportable as an alien who was excludable at the time of entry.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—immigrant—no visa.

Respondent is 33 years old, married, female, a native and citizen of Portugal. She was admitted to the United States on June 29, 1961, as a United States citizen in possession of a United States passport issued to her at Lisbon, Portugal on May 16, 1961. The special inquiry officer found that respondent is not a United States citizen, that she was not entitled to a United States passport, that she was not in possession of a valid, unexpired immigrant visa, and that she is deportable. He found that she is not eligible for any form of discretionary relief except voluntary departure, that she declined to apply for voluntary departure, and he ordered her deported from the United States to Portugal on the charge set forth above. She appeals from this order. The appeal will be dismissed.

Respondent claims United States citizenship through her mother who was Maria dos Anjos Morris. This woman was born in New Bedford, Massachusetts on September 3, 1901. Maria Morris (or Mauricio) was married on November 20, 1916, in New Bedford, Massachusetts to Paulo Amado, a native of Portugal, who never became a United States citizen. Shortly after their marriage Maria Morris and Paulo Amado went to Brazil to live. After seven years Paulo Amado returned to Portugal, and Maria Morris joined him in Portugal a year later. Paulo Amado divorced Maria in March 1932.

Respondent was born in Portugal on May 6, 1931. Her father was Luiz Amado, who was no relation to her mother's husband. Respondent testified that her parents were never married. Maria Morris Amado married again in Portugal around 1942 and was divorced from her second husband two years later. The record establishes that Maria (respondent's mother) never returned to the United States to live and never made any effort or took any steps to resume her United States citizenship. She returned once to the United States for a visit, for perhaps "a couple of months", following which she returned to Brazil. Respondent testified that her mother never resumed residence in the United States after her marriage in 1916. (Statement, August 27, 1962, p. 3.)

Respondent's natural father, Luiz Amado, was never in the United States and was not a United States citizen. The Vice Consul at the United States Consulate at Lisbon, Portugal granted respondent's application for a United States passport on the ground that she acquired citizenship at birth as the illegitimate child of an American mother under section 205 of the Nationality Act of 1940.[1] The District Director at Boston, the Regional Commissioner at Burlington, Vermont, and the special inquiry officer in the instant proceedings, all have found as follows: Under section 3 of the Act of March 2, 1907,[2] Maria Morris Amado, respondent's mother, lost her citizenship when she married in 1916. The Act of 1907 was repealed by section 7 of the Act of September 22, 1922,[3] but Maria Morris Amado took no step toward resuming her citizenship under the Act of September 22, 1922.

---

[1] Sec. 205 of the Nationality Act of 1940 provides:

The provisions of Section 201, subsections (c), (d), (e) and (g), and Section 204, subsections (a) and (b), hereof apply, as of the date of birth, to a child born out of wedlock, provided the paternity is established during minority, by legitimation, or adjudication of a competent court.

In the absence of such legitimation or adjudication, the child, whether born before or after the effective date of this Act, if the mother had the nationality of the United States at the time of the child's birth, and had previously resided in the United States or one of its outlying possessions, shall be held to have acquired at birth her nationality status. 54 Stat. 1139–1140; 8 U.S.C. 605.

[2] Sec. 3 of the Act of March 2, 1907 provides: That any American woman who marries a foreigner shall take the nationality of her husband. At the termination of the marital relation she may resume her American citizenship, if abroad, by registering as an American citizen within one year with a Consul of the United States, or by returning to reside in the United States, or, if residing in the United States at the termination of the marital relation, by continuing to reside therein.

[3] Sec. 7 of the Act of September 22, 1922: That Section 3 of the Expatriation Act of 1907 is repealed. Such repeal shall not restore citizenship lost under such section nor terminate citizenship resumed under such section. A woman who has resumed under such section citizenship lost by marriage shall, upon passage of this Act, have for all purposes the same citizenship status as immediately preceding her marriage.

She was still married to an alien and was still living abroad. However, she recovered her citizenship at the time of the passage of the Act of June 25, 1936,[4] because by that time her marital status had terminated; even though she maintained her residence abroad the Act of June 25, 1936 automatically restored her United States citizenship. *Matter of P—*, 1 I. & N. Dec. 127 (BIA, June 26, 1941; A.G., November 22, 1941). However, restoration of United States citizenship to Maria Amado was of no benefit to respondent, born in 1931, because the Act of June 25, 1936 is prospective and not retrospective. It does not change the fact that respondent's mother was an alien at the time of respondent's birth in 1931. We find no ground to disagree with this conclusion.

The Act of May 24, 1934 [5] was the first statute to extend United States citizenship to children born out of wedlock to United States citizen mothers abroad. 39 Op. Atty. Gen. 397 (1939) stated there was no objection to the issuance of instructions to consular officers that illegitimate children born abroad of American mothers before the amendment of May 24, 1934, became effective, could not possibly be regarded as citizens of the United States under R.S. 1993. The Court points out in *Montana* v. *Kennedy*, 366 U.S. 308 (U.S. 1961), that when Congress amended R.S. 1993 by the Act of May 24, 1934, to grant citizenship rights to the foreign born children of citizen mothers, Congress "made clear its view that this was a reversal of prior law". This enactment, of course, is of no help to respondent, because she did not begin to reside permanently in the United States during her minority (see [5]).

Respondent's only plea is that she made a full disclosure of all facts at the time she applied for her passport and was not guilty of any fraud. She was granted an American passport by a representative of the State Department, and she acted in good faith. She testified that she sold three houses she owned in Portugal in order to get the money to come to the United States and had suffered substantial loss by liqui-

---

[4] Act of June 25, 1936: * * * That hereafter a woman, being a native-born citizen, who has or is believed to have lost her United States citizenship solely by reason of her marriage prior to September 22, 1922, to an alien, and whose marital status with such alien has or shall have terminated shall be deemed to be a citizen of the United States to the same extent as though her marriage to said alien had taken place on or after September 22, 1922 * * *.

[5] Act of March 2, 1907, as amended by the Act of May 24, 1934 provides: Sec. 5. That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the father *or the mother: Provided*, That such naturalization or resumption shall take place during the minority of such child; and *provided further*, That the citizenship of such minor child shall begin five years after the time such minor child begins to reside permanently in the United States. (48 Stat. 797; 8 USC 8)

dation of these assets. She states further that she is suffering from a heart condition and has been hospitalized recently.

The board recognizes the harshness of the decision and the hardship of deportation under these circumstances. However, the error of an employee in the State Department in erroneously issuing a United States passport does not bestow United States citizenship on an alien who is not entitled to it. We do not find that the government was guilty of such misconduct as to be estopped from now denying the effect of the passport. In *Montana* v. *Kennedy, supra*, the Court recognized the harshness of the result where the petitioner was born in Italy of a United States citizen mother in 1906 and returned to the United States the same year. He resided in the United States for 55 years, but the court held that he derived no United States citizenship from his mother under any statute. That decision is controlling here. There have been cases which held the United States estopped from denying citizenship because of the conduct of its officials, but the conduct of the State Department here does not reach that degree of error. The appeal must be dismissed.

**ORDER:** It is ordered that the appeal be and is hereby dismissed.