**Martha ELIAS, Plaintiff,**

v.

**U.S. DEPARTMENT OF STATE, et al., Defendants.**

**No. C–88–0854 RFP.**

United States District Court, N.D. California.

June 7, 1989.

Susan Eglehart, Penelope A. Chronis, James M. Byrne, San Francisco, Cal., for plaintiff.

Susan L. Kamlet, Asst. U.S. Atty., San Francisco, Cal., for defendants.

## AMENDED ORDER

PECKHAM, District Judge.

### I. INTRODUCTION

Defendants denied plaintiff a United States passport on the ground that plaintiff is not a United States citizen. Plaintiff, whose mother was an American citizen, argues that the applicable statute, which grants citizenship to the foreign-born offspring of male American citizens but not female American citizens, violates her right to the equal protection of the laws.

There is no dispute as to the relevant facts. The parties have filed cross motions for summary judgment.

### II. BACKGROUND

The plaintiff's mother, Bertha Dirksen, was born a United States citizen in Nebraska in 1889. Some time between 1900 and 1910, Ms. Dirksen moved to Canada. She

married a Canadian citizen, plaintiff's father, in Canada in 1910. The plaintiff was born in Canada in 1921.

The plaintiff's father died in 1964. Ms. Dirksen visited the United States throughout her life before passing away in 1969.

Plaintiff applied for a United States passport on October 2, 1987. The State Department denied her request on the ground that she is not a United States citizen. Plaintiff exhausted her administrative remedies and commenced this action. She challenges the State Department's determination that she is not a United States citizen.

## III. DISCUSSION

### A. *Introduction*

The Supreme Court in *Rogers v. Bellei*, 401 U.S. 815, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971), distinguished between Fourteenth Amendment citizenship and citizenship bestowed by the power of Congress pursuant to Article I, section 8, paragraph 4 of the Constitution. The Fourteenth Amendment grants citizenship to "[a]ll persons born or naturalized in the United States. . . ." If a person qualifies for such citizenship, Congress cannot take it away absent the assent of that person. *Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967). Plaintiff does not qualify for such citizenship. Thus, her claim to citizenship depends upon Congress' exercise of its power to grant citizenship to non-naturalized persons and those not born within the United States.

Article I, section 8, paragraph 4 of the Constitution gives Congress the power "[t]o establish an uniform Rule of Naturalization. . . ." Congress exercised this power by providing in Section 1993 of the Revised Statute of 1874 (hereinafter "statute") that

[a]ll children heretofore born or thereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States.

Under section 1993, only a United States citizen-father could transmit United States citizenship to a child born outside of the United States; a United States citizen mother could not. Congress amended section 1993 via the Act of May 24, 1934, 48 Stat. 797, to provide that either parent could transmit his or her United States citizenship to foreign born offspring. The 1934 Act was not retroactive, however.[1]

In the instant case, Section 1993—the statute then in effect—does not provide Ms. Elias with American citizenship. Even though Ms. Elias would be awarded citizenship if her father rather than her mother were a citizen, the statute makes Ms. Dirksen's United States citizenship irrelevant. Under its terms, Ms. Dirksen is not allowed to pass on her citizenship to her daughter even though a male in her position could.

Plaintiff attacks the constitutionality of section 1993 on both her own and her mother's behalf. In addition to claiming that she is deprived the equal protection of the laws, plaintiff on behalf of Ms. Dirksen asserts that the statute discriminates against female United States citizens because it allows citizen fathers but not citizen mothers to pass on their citizenship to their foreign-born offspring.

### B. *The Non–Citizen Challenge*

At the outset, we recognize that we apply a significantly different standard of review to the claims of an unadmitted alien than to the challenge of a United States citizen. The Supreme Court has stated clearly that "an unadmitted and non-resident alien [has] no constitutional right of entry to this country." *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). In that same opinion, however, the Supreme Court indicated that United States citizens' rights can be implicated by immigration decisions. 408 U.S. at 764–65, 92 S.Ct. at 2582–83. If they are,

---

1. Congress has amended this provision several times since, gradually loosening the requirements for establishing citizenship through a citizen-parent. The current provision appears at 8 U.S.C. § 1401. None of these statutes has been applied retroactively.

the Court has required that the government provide at least a "facially legitimate and bona fide" rationale for such infringement. 408 U.S. at 769, 92 S.Ct. at 2585.

With regard to plaintiff's own claims, the Fifth Circuit rejected a similar challenge by an unadmitted alien to the constitutionality of Section 1993. In *Villanueva–Jurado v. Immigration and Naturalization Serv.*, 482 F.2d 886 (5th Cir.1973), the petitioner, born in Mexico in 1932, could claim citizenship under Section 1993 or not at all. As in the instant case, petitioner's mother was a United States citizen but his father was not. In the context of a review of a deportation order, petitioner argued that the statutory distinction between the foreign-born offspring of American fathers and mothers constituted "invidious discrimination forbidden by the Constitution." *Id.* at 887. In language closely resembling the above-quoted passage from *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), decided several months later, the Fifth Circuit disagreed.

> An alien has no constitutional right to citizenship which is a privilege conferred as a matter of grace by Congress under Article I, § 8 of the United States Constitution....

*Id., quoting Hein v. United States Immigration and Naturalization Serv.* 456 F.2d 1239, 1240 (5th Cir.1972). The court went on to state that "Congress has a completely free hand in defining citizenship as it relates to persons born abroad." *Villanueva–Jurado, supra,* 482 F.2d at 887, *quoting United States v. Trevino Garcia,* 440 F.2d 368, 369 (5th Cir.1971).

Plaintiff attempts to distinguish *Villanueva–Jurado* on two grounds. First, she notes that the case was decided two years

before *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), which held that gender discrimination is subject to "heightened scrutiny." Implicit in this argument, however, is the assumption that the *Villanueva–Jurado* court subjected section 1993 to a "rational basis" standard of review, and that a more stringent standard is appropriate in light of *Craig v. Boren.* This is incorrect. The *Villanueva–Jurado* court specifically declined to determine whether the statute was "unreasonable, arbitrary, or unlawful" since an unadmitted alien had no basis from which to mount a constitutional challenge to a Congressional statute. In short, given that the grant of citizenship was one of congressional grace, the court subjected the statute to no scrutiny at all.

Second, plaintiff argues that the basis of the *Villanueva–Jurado* court's decision is unclear, and that in any event the equal protection clause is not mentioned. Indeed, if the equal protection clause did apply, it is doubtful that this statute could withstand even the most deferential scrutiny. The court's failure to consider the applicability of the equal protection clause is unsurprising, however, in light of its conclusion that Article I, section 8 grants of citizenship are not subject to constitutional limitation by an unadmitted alien.[2]

The reasoning of the Fifth Circuit is, of course, not binding on this court. With all due respect to that tribunal, it is possible that recent case law recognizing at least limited judicial scrutiny of immigration legislation and the advances made by women in the intervening sixteen years warrant a re-examination of its rationale. In that regard, we note that plausible grounds may exist to at least support plaintiff's challenge on her own behalf.[3] Rather than

---

**2.** They are subject to the requirement of Article I, section 8, that laws governing naturalization be "uniform." After supplemental briefing by the parties, however, we conclude that this requirement requires only that the standards of citizenship may not differ between the states. *See, Kharaiti Ram Samras v. United States,* 125 F.2d 879, 881 (9th Cir.1942) (rejecting argument that racially discriminatory law is not uniform).

**3.** Plaintiff urges the court to test the rationality of the statute based upon *Rogers v. Bellei,* 401

U.S. 815, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971). There, the Supreme Court addressed the constitutionality of a later version of Section 1993 that caused a foreign-born child of an American father *or* mother to lose his or her United States citizenship if the child failed to satisfy certain residency requirements by age 28. *See,* § 301(a)(7) of the Immigration and Nationality Act of June 27, 1952, 66 Stat. 236, 8 U.S.C. § 1401(a)(7). The Supreme Court rejected petitioner's fourteenth amendment challenge to the

attempt to weigh the current validity of the Fifth Circuit's approach, however, we now turn to assertions that neither the Fifth Circuit nor other reviewing courts have assessed: that the statute discriminates against United States citizen females rather than the unadmitted alien.

### C. *The Citizen's Challenge*

1. Plaintiff's Standing for Ms. Dirksen's Claims

■ In order to weigh the merits of Ms. Dirksen's challenge, we first must establish whether plaintiff has standing to sue on her behalf. As an initial matter, we emphasize that the government does not dispute that plaintiff should be allowed to assert whatever rights her deceased mother might have. To its credit, it states:

> Although it is unclear how many persons similarly situated to plaintiff's mother exist, such person's rights, if any, could conceivably be diluted by an adverse ruling on plaintiff's constitutional claim in this case. The interests of plaintiff and any rights her mother may have possessed with regard to § 1993 appear to be mutually interdependent.... Given these considerations, it appears that the prudential doctrine prohibiting standing to assert the rights of a third party might be relaxed to allow plaintiff to assert her mother's rights, if any, with regard to § 1993.

Defendant's Supplemental Brief at 4.

As a general rule, a party to whom a statute may constitutionally be applied may not challenge that statute on the grounds that the statute may conceivably be applied unconstitutionally to others. *Singleton v. Wulff,* 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976); *Parker v. Levy,* 417 U.S. 733, 759, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974). This barrier against the assertion of third party rights is not

constitutionally mandated. *Craig v. Boren,* 429 U.S. 190, 193, 97 S.Ct. 451, 454, 50 L.Ed.2d 397 (1976); *Bell & Howell v. NLRB,* 598 F.2d 136, 143 (D.C.Cir.1979). Rather, the doctrine is a prudential "rule of self-restraint" designed to minimize unwarranted intervention into controversies where applicable constitutional controversies are ill-defined and where third party interests may not be sufficiently protected. *Craig,* 429 U.S. at 193, 97 S.Ct. at 454. It is to be relaxed where there are "weighty countervailing policies" that favor third-party standing. *Parker,* 417 U.S. at 759, 94 S.Ct. at 2563; *Hatheway v. Sec'y of Army,* 641 F.2d 1376, 1383 (9th Cir.1981).

In appropriate circumstances, the federal courts have upheld a plaintiff's assertion of third party rights. *Singleton,* 428 U.S. at 113–18, 96 S.Ct. at 2873–76 (doctors who perform nonmedically indicated abortions may assert patients' constitutional rights); *Craig,* 429 U.S. at 194–97, 97 S.Ct. at 455–57 (female beer vendor allowed to assert equal protection challenge of male beer drinkers); *Irving v. Clark,* 758 F.2d 1260, 1267 (8th Cir.1985) (child of deceased landowner permitted to assert parent's fifth amendment just compensation claim). To determine whether such an assertion should be allowed, the court should consider two factors: (1) the relationship of the litigant to the person whose right he or she seeks to assert, and (2) the ability of the third person to assert his or her own right. *Singleton,* 428 U.S. at 114–16, 96 S.Ct. at 2874–75.

Under the first arm of this standard, the court examines the relationship between the plaintiff and the third party to ensure that the plaintiff will be an effective proponent of the third party's interest and that the third party's rights are, in fact, implicated. *Singleton,* 428 U.S. at 114–15, 96 S.Ct. at 2874–75. Especially when the

---

residency requirements partly on the ground that their imposition was not "unreasonable, arbitrary, or unlawful." 401 U.S. at 831, 91 S.Ct. at 1069.

Although this "unreasonable, arbitrary, or unlawful" standard implies that the courts are authorized to make some limited review of alien challenges to Article I, Section 8 grants of citi-

zenship, the *Bellei* court also suggested in dicta that the particular law currently challenged— Section 1993—was not vulnerable to such constitutional challenge. 401 U.S. at 826, 91 S.Ct. at 1066. In light of our conclusions regarding the citizen's challenge of the statute, we do not determine whether the statute should be invalidated based on the *Bellei* caveat.

child's interests are inextricably linked to the rights of the parent, the child can be presumed to represent effectively the interests of the parent. *See, Irving v. Clark,* 758 F.2d 1260, 1267 (8th Cir.1985). This is clearly such a case: Ms. Dirksen's right to transmit her citizenship is involved to the same extent that Ms. Elias' right to obtain citizenship is concerned. For the same reason, it is readily apparent that Ms. Dirksen's interests are implicated. In this instance, then, the relationship is more than sufficient to address the concerns that underlie the prudential doctrine.

With the second factor, the court is to look at the ability of the third party to assert his or her own right to assure that the third party's right is truly at stake and sufficiently important to the third party to warrant judicial consideration. As the *Singleton* court stated:

> If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by the default the right's best available proponent.

428 U.S. at 116, 96 S.Ct. at 2875. In this instance, the deceased mother cannot assert her rights for self-evident reasons. A parent's inability to "rise from the grave to assert his own rights" can justify the child's assertion of the parent's rights if the first arm of the *Singleton* test is satisfied. *Irving v. Clark,* 758 F.2d 1260, 1267 (8th Cir.1985). Perhaps more importantly in this circumstance, the rights of persons similarly situated to plaintiff's mother will be diluted by an adverse ruling.[4] Although it is difficult to ascertain the exact number, other American mothers cannot transmit their citizenship to their children due to Section 1993.[5] Plaintiff has offered to amend her complaint in order to add as additional plaintiffs women similarly situated to Ms. Dirksen. In light of the advanced age of the similarly situated persons[6] and plaintiff's ability to proceed on behalf of her mother, such amendment is not necessary. It is clear that she is an effective proponent of their rights just as she will be for her mother.

Plaintiff thus easily satisfies the standard for relaxing the prudential doctrine and will be allowed to assert the rights of her mother. We now turn to the merits of Ms. Dirksen's claim.

**2. Merits of the Citizen Challenge**

■ The government asserts two defenses to the mother's claim that Section 1993 infringes upon her equal protection rights. It argues first that no constitutional right to transmit citizenship exists. It then acknowledges that limited judicial review based upon the equal protection and due process rights of United States citizens might be applied to congressional policy decisions in the area of immigration. Based upon the Supreme Court's decision in *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1976), however, it argues that this review does not permit judicial reevaluation of Section 1993. We do not find these arguments persuasive.

As a starting point, it is important to reiterate the basis of Ms. Dirksen's challenge. She does not and cannot assert that Congress is constitutionally precluded from restricting the ability of citizen parents to transmit their citizenship to their foreign-born children. *See, Rogers v. Bellei,* 401 U.S. 815, 827–30, 91 S.Ct. 1060, 1067–69, 28 L.Ed.2d 499 (1971) ("the Court has specifically recognized the power of Congress not to grant a United States citizen the right to transmit citizenship by descent"). Rather, Ms. Dirksen asserts that having allowed parents to transmit citizenship to their children pursuant to its Article I, section 8

---

4. "Similarly situated women" are female United States citizens who gave birth abroad to legitimate children of foreign fathers between 1855 and 1934.

5. Plaintiff has provided the declaration of at least one such woman who would like to provide citizenship for her foreign-born child but cannot due to Section 1993.

6. In light of the definition of similarly situated women in note 4, the youngest such women still alive would be at least seventy years old today.

power, Congress may not permit men but not women to do so without at least some rationale. Stated in other terms, the mother does not contend that she has a privacy or substantive due process right to transmit her citizenship to her daughter; she argues that Congress violated her right to equal protection under the laws when it utilized the suspect classification of gender without justification.

At the outset, then, the government's initial argument must be rejected for two reasons. First as we have just explained, Ms. Dirksen does not claim a right to transmit her citizenship but to equal protection. Thus, the two Supreme Court cases the government properly cites for the proposition that no constitutional right to transmit citizenship exists, *Rogers v. Bellei*, 401 U.S. 815, 830, 91 S.Ct. 1060, 1068, 28 L.Ed.2d 499 (1971); *Montana v. Kennedy*, 366 U.S. 308, 310, 81 S.Ct. 1336, 1338, 6 L.Ed.2d 313 (1960), are inapposite. Second, the mother asserts her rights as an American citizen rather than as an unadmitted alien. In these two cases as well as others reviewing Section 1993 and its successor statutes, the courts examined and found lacking the claims of unadmitted aliens. Like the Fifth Circuit in *Villanueva–Jurado*, 482 F.2d 886 (5th Cir.1973) or the Ninth Circuit in *Ramos–Hernandez v. INS*, 566 F.2d 638 (9th Cir.1977), the *Bellei* Court simply did not confront nor address the rights of United States citizens implicated by Section 1993. The absence of such discussion is not surprising. Not only were the plaintiffs in those cases unadmitted aliens, but the Supreme Court did not first address the rights of United States citizens affected by immigration legislation until after it decided *Bellei*. *See, Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972).

Having framed the issue, we now address the government's second argument: that the limited review of immigration legislation implicating citizens' rights does not warrant reevaluation of Section 1993. The Supreme Court has recognized that the court must provide at least some minimal level of review to the constitutional claims of United States citizens. In *Kleindienst v. Mandel*, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972), the first Supreme Court case to address the rights of United States citizens affected by immigration legislation, the Court recognized the broad Congressional power over immigration policy but required the government to show at least a facially legitimate and bona fide reason for its action. 408 U.S. at 769, 92 S.Ct. at 2585. In *Mandel*, the Court addressed the effect of the Attorney General's discretionary denial of a visa to a Marxist theoretician upon the first amendment rights of American students and scholars who had invited him. Although the government urged the court to rule that it need not provide any rationale, the Court found that the Attorney General's reliance upon Mr. Mandel's previous visa violations made the denial constitutionally permissible. 408 U.S. at 769, 92 S.Ct. at 2585. In *Fiallo v. Bell*, 430 U.S. 787, 792–94, 97 S.Ct. 1473, 1477–79, 52 L.Ed.2d 50 (1977), the Court made this implied standard of review explicit.

> Our cases reflect acceptance of a limited judicial responsibility under the Constitution even with respect to the power of Congress to regulate the admission and exclusion of aliens.

430 U.S. at 793, n. 5, 97 S.Ct. at 1478, n. 5.

Relying upon *Fiallo*, the government asserts that the limited review discussed in these cases does not warrant overturning Section 1993. In *Fiallo*, the Supreme Court reviewed an immigration statute that distinguished between the mothers and fathers of illegitimate children in the awarding of preferential immigration status. Under its terms, neither a non-citizen father of an illegitimate citizen child nor a non-citizen illegitimate child of a citizen father would receive such status. Thus, males but not females in certain situations were precluded from beneficial treatment. The Supreme Court rejected the equal protection and due process claims of the alien fathers and children. In stressing the limited nature of the inquiry, the Court emphasized that Congress must be left to distinguish which of the widely varying relationships and degrees of kinship should

be awarded preferential treatment. 430 U.S. at 795, n. 6, 97 S.Ct. at 1479, n. 6. This necessarily political judgment required Congress not only to consider the "nature of these relationships but also the problems of identification, administration, and the potential for fraud." *Id.* Specifically, the Court concluded, the possible problems of proof in paternity determinations may have warranted such differential treatment. 430 U.S. at 799, 97 S.Ct. at 1481.

The government suggests that the *Fiallo* Court's rejection of an equal protection claim based upon the facially differential treatment of men and women warrants a similar conclusion here. Upon a closer examination, this argument must be rejected. As an initial matter, the gender classification in *Fiallo* had at least a supportable justification: the problems of proving paternity of an illegitimate child. In the instant situation, the government has offered no rationale at all. Nor can we can imagine one other than the Congress of that day simply assumed that women as the chattels of their husbands should not be entitled to transmit their United States citizenship to their foreign-born offspring. This is obviously neither legitimate nor bona fide.

Perhaps more importantly, the *Fiallo* Court weighed a gender-based classification in a Congressional determination significantly different than the instant one. The classification at issue in *Fiallo* affected visas subject to numerical limitations.[7] Under what is known as the preference system, Congress authorized 270,000 of these visas and set forth the familial relationships that should be awarded the highest priority in their allotment.[8] 8 U.S.C. § 1153. As the *Fiallo* Court noted, Con-

gress necessarily had to distinguish between the various forms of the extended family to determine the operation of the preference system. 430 U.S. at 795 n. 6, 97 S.Ct. at 1479 n. 6. Moreover, Congress was required to consider the administration of this system as it defined those eligible. As noted above, the differential treatment of males and females was justified due to the administrative difficulty of approving paternity in contrast to maternity of illegitimate children.

In Section 1993, however, Congress dealt with visas not subject to numerical limitation. Thus, Congress was neither obligated to draw lines nor involved in the administration of the preference system. It could have authorized both American fathers and mothers to transmit their citizenship to their children. Rather than allocating a limited number of visas based on the particular family relationships as it did in the *Fiallo* classification, Congress in Section 1993 simply determined that non-citizen children of American mothers should not have access to the unlimited visas. *Fiallo* thus does not suggest that we should reject Ms. Dirksen's claim that Section 1993 violates her equal protection rights.

Turning to Section 1993 itself, we are obliged to find the statute's differential treatment of men and women unconstitutional if the review power explicitly articulated by the *Fiallo* Court is to have any meaning. Although the *Fiallo* Court upheld the statute it reviewed, it recognized that judicial inquiry served to limit the arbitrary exercise of Congressional action in the immigration field. We have such unjustified action in this instance. Just as

---

**7.** The statutory definition at issue in *Fiallo*, codified at 8 U.S.C. § 1101(b)(1), applied both to visas subject and not subject to numerical limitation. Under the Immigration and Naturalization Act, 8 U.S.C. § 1101 *et seq,* an alien seeking immigrant status may qualify for a visa not subject to limit if he or she is an immediate relative of United States citizens or qualifies as a special immigrant. 8 U.S.C. 1151(b). The visas subject to the numerical cap are granted to aliens based upon lesser familial relationships with American citizens or permanent resident aliens as well as other factors. 8 U.S.C. 1153. Because Section 1993 concerns only unlimited

visas, we emphasize in this discussion that the definition analyzed in *Fiallo* affects visas subject to numerical limitation.

**8.** For example, the first preference guarantees 20% of the 270,000 visas of this type for unmarried sons and daughters of United States citizens. 8 U.S.C. § 1153(a)(1). The second preference provides that 26% of the total are to be used by spouses and unmarried sons and daughters of permanent resident aliens. 8 U.S.C. § 1153(a)(2).

**250**

if Congress attempted to preclude black but not white aliens from entry, this statute infringes upon the most basic of constitutional protections without any any justification. Not only does it involve the facially discriminatory treatment of a suspect class, *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976), but it infringes upon the individual's right to determine her own family living arrangements. As the Supreme Court has stated, "our decisions establish that the Constitution protects the sanctity of the family precisely because this institution of the family is deeply rooted in this Nation's history and tradition." *Moore v. East Cleveland,* 431 U.S. 494, 503 n. 12, 97 S.Ct. 1932, 1937 n. 12, 52 L.Ed.2d 531 (1977) (four justice plurality). *See also, Smith v. City of Fontana,* 818 F.2d 1411, 1417–19 (9th Cir.1987); *Franz v. U.S.,* 707 F.2d 582 (D.C.Cir.1983), *amended,* 712 F.2d 1428 (D.C.Cir.1983). Although we are to grant Congress substantial deference in the immigration field, it cannot be exempt from constitutional precepts simply because it is dealing with non-citizens.

This statute's use of a suspect classification cannot pass the limited review we provide Congressional legislation in the immigration field: it is unconstitutional.

### IV. CONCLUSION

For the above reasons, we find Section 1993's differential treatment of male and female American citizens is unconstitutional. Plaintiff's motion for summary judgment is therefore granted, and defendant's motion for summary judgment is denied.

IT IS SO ORDERED.