**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 12 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

RAYMUNDO GUADALUPE
VILLARREAL-VALDEZ,

Defendant-Appellant.

No. 03-3115

(D.C. No. 02-CR-10038-01-MLB)

(D. Kansas)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **HENRY** , and **HARTZ** , Circuit Judges.

---

Defendant Raymundo Villarreal-Valdez appeals following a conditional

plea of guilty to illegal reentry into the United States in violation of 8 U.S.C.

§ 1326.  He challenges the district court's decision overruling his motion to

dismiss the indictment on the grounds that he qualifies as a United States citizen

---

*After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and that he was denied due process at the immigration hearing that resulted in his deportation.

Defendant was born in Mexico in 1975. His father was a Mexican national, but on June 8, 1997, his mother and grandmother were recognized as United States citizens from birth. Beginning in 1988 Defendant resided primarily in the United States. On June 8, 1992, Defendant was issued a Resident Alien or "green" card allowing him to be lawfully present in the United States until June 8, 2002.

In 1996 Defendant pleaded guilty to a Colorado felony marijuana offense and served a short prison sentence. When he was released, he was given an immigration hearing, at which he was not represented by counsel. At the hearing his permission to remain lawfully in the United States was revoked. He waived appeal and was deported on October 18, 1996.

The district court found that Defendant was not informed that he could apply to stay in the United States, but held that he nevertheless was not denied due process. The district court likewise refused to dismiss the indictment on the ground that Defendant is a United States citizen. Defendant entered a conditional guilty plea to illegal reentry and now appeals the district court's decision. We affirm.

## I.    Derivative Citizenship

"To obtain a conviction under 8 U.S.C. § 1326 for illegal reentry after deportation, the government must prove the defendant: (1) is an alien; (2) was previously arrested and deported; (3) was thereafter found in the United States; and (4) lacked the permission of the Attorney General." *United States v. Anaya*, 117 F.3d 447, 449 (10th Cir. 1997). Defendant contends that the district court erred in failing to dismiss the indictment for illegal reentry because he is derivatively eligible for United States citizenship under 8 U.S.C. § 1401. The district court's decision not to dismiss the indictment is a matter of law that we review de novo. *See Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1189 (10th Cir. 1999).

At the time of Defendant's birth § 1401 provided:

> [A] person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years

is a national and citizen of the United States. 8 U.S.C. § 1401(a)(7) (1952). The district court held that "[s]ection 1401(a)(7), which was in effect at the time of defendant's birth, could not have conferred citizenship on defendant because there is no evidence that defendant's mother, even though later 'deemed' to have been a U.S. citizen at <u>her</u> birth, was physically present in the United States prior

to <u>defendant's</u> birth for a period or periods totaling ten years, at least five of which were after she attained the age of 14." Dist. Ct. Memorandum & Order, at 5. We agree.

Defendant "concedes there is no evidence in the record to establish the residency requirements of his mother in the United States prior to his birth pursuant to 8 U.S.C. §1401(g)." Aplt. Br. at 8-9. His claim of derivative citizenship is consequently not based on the plain language of § 1401. Rather, he argues that "[t]he residency requirement . . . is an unfair application of the statute on a person who could not legally establish her prior residency . . . because at that time she was deemed illegal, and is only later recognized as a U.S. citizen from her birth." *Id.* at 9.

Assuming, without deciding, that because Defendant's mother is considered a citizen from birth, she satisfied the citizenship requirement at the time of Defendant's birth, we see no reason why she would be incapable of meeting the residency requirements. *See* § 1401(a)(7) (1952). Defendant's mother could have been legally present in the United States for the requisite period of time even though she had not yet been deemed a citizen. We therefore fail to see how applying the residency requirements of § 1401 in these circumstances is unfair.

In any event, "Congress unquestionably possesses the authority to create standards for the attainment of United States citizenship by foreignborn persons."

*Gonzalez de Lara v. United States*, 439 F.2d 1316, 1317 (5th Cir. 1971); *see also* U.S. Const. art. I, § 8, cl. 4; *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) ("plenary congressional power to make policies and rules for exclusion of aliens has long been firmly established"). We have no authority to construe away the unambiguous residency requirements of § 1401. *See Montana v. Kennedy*, 366 U.S. 308, 314 (1961). Accordingly, we conclude that Defendant cannot claim derivative citizenship through his mother.

## II. Citizenship Under 8 U.S.C. § 1431

Defendant next asserts that he automatically became a citizen by operation of 8 U.S.C. § 1431. But we decline to address this issue on appeal because Defendant did not raise it in the district court. *See United States v. Mora*, 293 F.3d 1213, 1218 (10th Cir. 2002).

## III. Due Process

Defendant also claims that the district court erred in failing to dismiss the indictment on the ground that his due process rights were violated at the underlying deportation hearing because he was not advised of his right to apply to stay in the United States.

"A defendant may collaterally challenge a deportation hearing in an 8 U.S.C. § 1326 prosecution if the defendant can show that the deportation hearing was fundamentally unfair and deprived the alien of the right to judicial review."

*United States v. Meraz-Valeta*, 26 F.3d 992, 998 (10th Cir. 1994); *see also*

*United States v. Mendoza-Lopez*, 481 U.S. 828, 838-39 (1987). Furthermore, this

court has held that an immigration judge, when aware of information indicating

that an individual may be eligible for relief from deportation, is required to

inform that individual of his apparent eligibility for relief. *United States v.*

*Aguirre-Tello*, 324 F.3d 1181, 1191 (10th Cir. 2003). "To succeed in this

collateral challenge, however, defendant . . . must show that he was prejudiced

and that he was thereby deprived of his right of direct appeal." *Id.* at 1192. To

demonstrate prejudice, Defendant must show that "there is a reasonable

probability that [he] would have obtained relief from deportation" if he had been

informed of his right to seek relief. *Id.* at 1193-94.

Relying on *INS v. St. Cyr*, 533 U.S. 289 (2001), Defendant contends that he

would have been eligible for relief at the time of his deportation under laws that

were in effect at the time of the immigration hearing. In *St. Cyr* the Supreme

Court held that the repeal of § 212(c) of the Immigration and Nationality Act

(INA) (allowing for a broad discretionary waiver of deportation by the Attorney

General) would not be applied retroactively so as to foreclose § 212(c) relief for

aliens whose convictions were obtained through plea agreements prior to the

repeal of § 212(c). *Id.* at 326. Although Defendant essentially concedes (as he

must) that he would not have been eligible for § 212(c) relief due to his inability

to satisfy the residency requirements of that section, he asserts that he would have been eligible for relief under another since-repealed statute which was in effect at the time he pleaded guilty. Specifically, he claims that he would have been eligible for relief under provisions of § 244 of the INA, formerly codified at 8 U.S.C. §1254(a) and (e). Defendant also claims that he qualified for relief under § 212(h) of the INA, codified at 8 U.S.C. § 1182(h).

The district court ruled that although Defendant had not been informed of his eligibility to seek relief from deportation, he had not made an adequate showing of prejudice. It pointed out that he had not offered any evidence relating to §§ 1182(h)(1)(B) and 1254(a), (e) at the hearing on the motion to dismiss the indictment. "Whether the district court erred in failing to dismiss the indictment due to alleged violations of due process in the underlying immigration proceedings is a mixed question of law and fact that we review de novo." *United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998).

We agree with the district court that Defendant has not met his burden of showing a reasonable probability that he would have obtained relief under § 212(h). That provision authorizes the Attorney General to waive the application of certain provisions making aliens ineligible for visas or admission (including conviction of certain crimes) "in the case of an immigrant who is the . . . son . . . of a citizen of the United States . . . if it is established to the satisfaction of the

Attorney General that the alien's exclusion would result in extreme hardship to the United States citizen." Defendant asserts that his parents (including his citizen mother) were going to suffer extreme hardship as a result of the deportation simply because he would be separated from them. This is not sufficient to show extreme hardship. *See Amaya v. INS*, 36 F.3d 992, 995 (10th Cir. 1994).

Similarly, we agree with the district court that Defendant did not make a sufficient showing that he would have obtained relief under § 1254. Under § 1254(a)(1) the Attorney General had discretion to suspend deportation of an individual who

> has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of [the] application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a) (1994). Again, on the issue of extreme hardship Defendant advances only that he would have been separated from his family.

As for §1254(e), the Attorney General was given discretion to permit an alien subject to deportation to "depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character

for at least five years immediately preceding his application for voluntary departure." 8 U.S.C. § 1254(e)(1) (1994). But that provision was not available to "any alien who is deportable because of conviction for an aggravated felony." *Id.* § 1254(e)(2). Defendant was deported after being convicted of an aggravated felony and was consequently not eligible for relief under § 1254(e).

Because Defendant has not made an adequate showing of prejudice, we conclude that the district court properly refused to dismiss the indictment. We affirm the district court's refusal to dismiss the indictment against Defendant and therefore AFFIRM the judgment and sentence below.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge